IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| NICOLAAS LYKE, | CV 22-147-BLG-TJC |
| Plaintiff, | |
| vs. | **ORDER** |
| MONTANA RAIL LINK, INC., | |
| Defendant. | |

Pending before the Court is Plaintiff Nicholaas Lyke's Motion for Summary Judgment on Liability and Defendant's Contributory Negligence Affirmative Defense.  (Doc. 31.)  The motion is fully briefed and ripe for the Court's review. (*See* Docs. 32, 36, 39.)

For the following reasons, IT IS ORDERED that Plaintiff's motion is GRANTED.

## I.    BACKGROUND[1]

On January 15, 2021, Plaintiff Nicolaas Lyke ("Lyke") was working as an engineer for Defendant Montana Rail Link, Inc. ("MRL") in the Logan rail yard in Logan, Montana.  (Doc. 37 at 2.)  Lyke climbed aboard a railcar to secure a

_____

[1] The factual background is taken from the facts in Plaintiff's Statement of Undisputed Facts (Doc. 33) that were not disputed by Defendant's Statement of Disputed Facts (Doc. 37).

1

handbrake, and then attempted to move across the railcar's platform in order to give hand signals to a coworker. (*Id.* at 2.)  When Lyke attempted to move across the platform, he grabbed a loose handhold that was missing a bolt. (*Id.* at 2–3, 6.) The handhold pulled away from the railcar, and Lyke fell from the platform of the railcar and landed on the ground below. (*Id.* at 2–3.)  The parties agree that Lyke suffered injuries to his back, elbow, knee, and ankle, although MRL disputes the nature and extent of Lyke's claimed injuries. (*Id.* at 4.)

Lyke subsequently underwent medical procedures on his ankle and back. (*Id.* at 4–5.)  Lyke could not work from January 15, 2021, to July 22, 2021. (*Id.* at 5.)  Lyke was then out of work again during a second period from September 9, 2021, to February 20, 2022, and during a third period from August 9, 2022, to November 9, 2023, although MRL disputes Lyke's inability to work during these latter two periods. (*Id.* at 5–6.)  During the intervening periods, Lyke performed light work duty, but MRL disputes that the inability to do more demanding work was a consequence of his injuries. (*Id.* at 6.) [2]

On December 21, 2022, Lyke brought this action against MRL, pleading a single cause of action under the Federal Employers' Liability Act (the "FELA"). (Doc. 1.)  In support of his FELA claim, Lyke alleged, i.a., that MRL violated the

---

[2] Lyke states that he "could only work light duty from July 3, 2021, to September 8, 2021," but this first date conflicts with his assertion that he could not work at all from the date of the incident through July 22, 2021. (*See id.* at 5–6.)  MRL does not raise this issue and the Court assumes it is a typographical error.

Safety Appliance Act, 49 U.S.C. §§ 20301–20306 (the "SAA").  (*Id.* at 3.)

Lyke seeks partial summary judgment on the issue of liability.  (Doc. 32 at 2.)  Lyke further seeks judgment as a matter of law on MRL's Ninth Affirmative Defense of contributory negligence.  (*Id.*; *see* Doc. 15 at 7.)

## II.    LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *Id.* at 322–23.

/ / /

3

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. (quoting Fed. R. Civ. P. 56(e)). In other words, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

In determining whether a genuine dispute of material fact exists, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255. But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Further, disputes over irrelevant or unnecessary facts will not preclude a party from satisfying the Rule 56 standard. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

/ / /

4

"A grant of partial summary judgment is appropriate where genuine disputes of material fact exist for only some claims." *Hernandez v. Marion Cty.*, 2017 WL 6029605, at *2 (D. Ore. Dec. 3, 2017).  "In resolving a motion for partial summary adjudication, the court must apply the same standards and criteria used for evaluating full motions for summary judgment." *Churchill v. Trinity Universal Ins. Co.*, 2010 WL 11468358, at *3 (D. Mont. Mar. 2, 2010) (citing *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998)).

## III.    DISCUSSION

Lyke argues that MRL's violation of the SAA constitutes negligence per se, making MRL liable for any injuries resulting from the violation.  (Doc. 32 at 7.) Thus, Lyke asks the Court to grant summary judgment as to liability and MRL's affirmative defense of contributory negligence.  (*Id.* at 2.)

In response, MRL argues that "Plaintiff's own negligence . . . was the sole cause of his fall and injuries."  (Doc. 36 at 1–2.)  MRL contends that Lyke was negligent because he ignored the missing bolt, ignored the loose condition of the handhold, and attempted to traverse the railcar without maintaining three points of contact.  (*Id.*)[3]

---

[3] MRL also contends that Lyke's citations to certain medical records and reports are not properly supported and lack authentication or the proper foundation.  (*Id.* at 8–10.)  Nevertheless, these records only relate to the issue of the nature and extent of Lyke's injuries and damages, and are not relevant to the liability issue presented by Lyke's motion. Therefore, MRL's objections do not affect the Court's

In reply, Lyke contends that the undisputed evidence establishes that he would not have fallen from the railcar but for MRL's SAA violation, which is all he must show to prevail on summary judgment on these issues.  (Doc. 39 at 8–9.)

## A.    Interaction Between the FELA and SAA

Two federal statutes are at work in this action.  First, there is the FELA, 45 U.S.C. §§ 51–60, which Congress enacted "to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees."  *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561 (1987).  The FELA created a federal cause of action whereby "[e]very common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce."  45 U.S.C. § 51.

Second, there is the SAA.  Under the provision of that statute pertinent to Lyke's claim, "a railroad carrier may use or allow to be used on any of its railroad lines . . . a vehicle only if it is equipped with secure grab irons or handholds on its ends and sides for greater security to individuals in coupling and uncoupling vehicles . . . ."  49 U.S.C. § 20302(a)(2).

Although "[t]he Safety Appliance Act did not create a federal cause of action for either employees or nonemployees seeking damages for injuries

_____

consideration of this motion for partial summary judgment.

resulting from a railroad's violation of the Act," the cause of action created by the FELA "embraces claims of an employee based on violations of the Safety Appliance Act." *Crane v. Cedar Rapids & Iowa City Ry. Co.*, 395 U.S. 164, 166 (1969) (citations omitted).  "In FELA cases based upon violations of the Safety Appliance Acts," a violation of the statute "creates liability under FELA if the resulting defect or insufficiency in equipment contributes in fact to the death or injury in suit." *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432–33 (1958).

"A primary purpose of the [FELA] was to eliminate a number of traditional defenses to tort liability and to facilitate recovery in meritorious cases." *Atchison*, 480 U.S. at 561.  The defense of assumption of risk, for example, was abrogated by statute.  45 U.S.C. § 54.  The common law defense of contributory negligence was also eliminated in favor of comparative negligence, which only diminishes recovery in proportion to fault.  *Id.* § 53.  Moreover, when the injury results from a violation of the SAA, comparative negligence is not available as a defense.  The Act provides that, when "the violation by [a railroad] common carrier of any statute enacted for the safety of employees contributed to the injury" of an employee, "no such employee who may be injured . . . shall be held to have been guilty of contributory negligence." *Id.*  "Proof of violation of certain safety-appliance statutes without more proves negligence and also eliminates contributory negligence as a consideration for any purpose." *Rogers v. Mo. Pac. R.R. Co.*, 352

U.S. 500, 507 n.13 (1957).

"Once the violation [of the SAA] is established, only causal relation is in issue." *Carter v. Atlanta & St. Andrews Bay Ry. Co.*, 338 U.S. 430, 434 (1949). Here, MRL concedes that the missing bolt on the handhold constituted a violation of the SAA. (Doc. 37 at 6; *see also* Doc. 26 at 2.) Therefore, the Court must determine on this motion for partial summary judgment whether there is any dispute of a material fact regarding whether MRL's violation of the SAA caused Lyke's injuries.

### B.    Whether MRL's SAA Violation Caused or Contributed to Lyke's Injuries

In establishing liability in an FELA claim alleging a violation of the SAA, "the injured employee is required to prove only the statutory violation and thus is relieved of the burden of proving negligence"—in other words, "[h]e is not required to prove common-law proximate causation but only that his injury resulted in whole or in part from the railroad's violation of the Act." *Crane*, 395 U.S. at 166 (citations and internal quotation marks omitted). Thus, the standard for causation under the FELA is whether the railroad's negligence "played any part, even the slightest," in producing the employee's injury. *Ditton v. BNSF Ry. Co.*, 2013 WL 2241766, at *18 (C.D. Cal. May 21, 2013) (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994)).

If the plaintiff's negligence was the "sole cause" of his injury, however, then

8

the statutory violation is immaterial because it could not have contributed "in

whole or in part" to the injury. *Id.* (quoting *Rogers*, 352 U.S. at 510).  In other

words:

> Any proof of negligence on the part of an injured employee in a suit
> predicated on a violation of a Safety Appliance Act is pertinent only
> to a contention by the defendant that such negligence was the sole
> efficient cause of the accident and that if in fact there was any
> violation of the Act such violation could not possibly have been a
> causative factor in making the injury occur.

*St. Louis Sw. Ry. Co. v. Ferguson*, 182 F.2d 949, 952 (8th Cir. 1950).

In considering a motion for summary judgment, courts must be mindful that

in lawsuits brought under the FELA, "Congress vested the power of decision in

these actions exclusively in the jury in all but the infrequent cases where fair-

minded jurors cannot honestly differ whether fault of the employer played any part

in the employee's injury." *Rogers*, 352 U.S. at 510 (reversing summary judgment

for defendant).

In opposing summary judgment, MRL points to several cases which have

determined that questions of fact concerning causation have precluded summary

judgment on the issue of liability.  In *Walden v. Illinois Central Gulf Railroad*, 975

F.2d 361 (7th Cir. 1992), for example, a railroad employee was injured when he

was thrown over his seat inside the engine while he attempted to board it during a

coupling of the engines to the boxcars.  *Id.* at 363.  At the time, he was unaware

that coupling was imminent because the radio communications became garbled

and were abandoned in favor of hand signals. *Id.* The employee sued the railroad under the FELA, and the district court concluded as a matter of law that the railroad had violated federal railroad regulations by failing to stop the engines once radio communications were interrupted. *Id.* at 362–63. The case proceeded to trial and the question of whether "defendant's violation . . . cause[d] or contribute[d] to some injury or damage sustained by the plaintiff" was submitted to the jury. *Id.* at 363–64. To this question, the jury answered in the negative and returned a verdict in favor of the railroad. *Id.* at 364. The employee moved for judgment notwithstanding the verdict, which the court denied. *Id.* at 363.

On appeal, the Seventh Circuit affirmed. The court articulated several hypothetical findings of fact that could have led the jury to determine that the employee's actions were the sole cause of his injuries. These included that he boarded the engine, unnecessarily, during the coupling process; that he continued, unnecessarily, through the cabin door where he knew there was nothing on which to hold; and that he knew that he should have braced during the coupling. The court also pointed out that, because of the plaintiff's unbraced position, the jury could have believed that the same injury would have occurred if the engine had been stopped immediately upon the loss of radio contact, as required by the regulation. Thus, the court found "[f]rom these circumstances a reasonable jury could have found that [the employee's] own actions were the sole cause of his

10

injuries," and that the railroad's violation of federal railroad regulations "did not contribute in whole or part" to his injuries. *Id.* at 364–65.

The Oregon federal district court reached the same conclusion on the issue of causation in an FELA claim in *Cook v. Union Pacific Railroad Co.*, 2011 WL 5842795 (D. Ore. Nov. 18, 2011). In *Cook*, the railroad failed to provide the plaintiff employee with transportation from his station back to the yard, which was a standard arrangement. *Id.* at *1. Instead of waiting for a ride at the station, the employee decided to walk back to the yard on foot. *Id.* Carrying approximately 50 pounds of equipment, the employee injured his back during the walk. *Id.* He subsequently sued the railroad under FELA and moved for summary judgment, arguing that he was "entitled to summary judgment on this claim because [the railroad] admitted that it breached its duty to provide him with a ride between the Amtrak station and yard, thus placing him in a dangerous situation." *Id.* at *3, 5.

The district court determined, however, that "this issue is not appropriate for decision on summary judgment." *Id.* at *5. Although the court agreed that a jury could find that the plaintiff's injuries "stemmed from [the railroad's] failure to provide a ride," the court could not rule out that the jury might weigh the evidence and decide that the sole cause of the plaintiff's injury "was his own decision to walk to the yard instead of to continue waiting at the station." *Id.* Accordingly, the court concluded that a jury must determine whether the railroad's negligence

11

caused the employee's injuries "in whole or in part." *Id.*

Another federal district court similarly denied summary judgment to the plaintiff in an FELA claim, even though the railroad's evidence on sole causation was characterized as questionable.  In *Bohannon v. Kansas City Southern Railway Co.*, 604 F. Supp. 3d 389 (W.D. La. 2022), the plaintiff employee attempted to disconnect the couplers connecting two railcars by pulling the pin lifter.  *Id.* at 391. When the pin lifter would not raise, he stopped the car with his remote control while continuing to grip the pin lifter, and then felt pain in his elbow.  *Id.* at 391– 92.  The employee sued the railroad under the FELA, claiming that the railroad violated the SAA with its defective pin lifter and that this violation caused his injury.  *Id.* at 392.

The district court concluded as a matter of law that the railroad violated the SAA, and the employee moved for summary judgment on the issue of causation. *Id.* at 394–95.  As to causation, however, both parties acknowledged that encountering stubborn pin lifters was a common occurrence, and there was training and specific rules to follow in the event of such an occurrence.  The railroad asserted that the employee negligently failed to follow the relevant training and guidelines on how to respond to pin lifters in these situations, and that this was the sole cause of the injury.  *Id.* at 396.

The court acknowledged that the factual dispute presented by the railroad

was "tenuous," but because both parties presented evidence to support their respective theories of causation, the court concluded that the issue of causation "should be submitted to the jury." *Id.* (quoting *Richards v. Consol. Rail Corp.*, 330 F.3d 428, 437 (6th Cir. 2003)).

Other courts have similarly denied plaintiffs' motions for summary judgment on the basis of the railroad asserting a sole cause defense. *See, e.g.*, *Kramarz v. Amtrak*, 2022 WL 1617719, at *6 (D.N.J. May 23, 2022) ("A reasonable jury could find that, despite the condition of the hatchway's safety features, Kramarz's failure to close the hatchway door prior to engaging in the task of moving the cantilever arms up onto the roof was the sole cause of his injuries."); *Fields v. Burlington N. & Santa Fe Ry.*, 2021 WL 4083406, at *3 (E.D. Okla. Sept. 8, 2021) ("[I]t is entirely possible that a reasonable jury could conclude that his injury was directly attributable to the sole cause of his negligence in utilizing the wrong type of knuckle."); *Makovy v. Kan. City S. Ry. Co.*, 339 F. Supp. 3d 1242, 1247 (E.D. Okla. 2018) ("Here, defendant has pointed to sufficient evidence [of independent acts of negligence by the plaintiff] to present a genuine dispute of material fact."); *Starling v. Union Pac. R.R. Co.*, 203 F.R.D. 468, 473–74 (D. Kan. 2001) (agreeing that "there are genuine factual issues with regard to . . . whether plaintiff's negligence may have been the sole cause," because "it is plausible that the engineer became incapacitated," whereby "it would have been . . . plaintiff's

13

duty alone[ ]to take over the situation").

Nevertheless, several decisions have reached the opposite conclusion and have found, as a matter of law, that the statutory violation contributed in whole or in part to the plaintiff's injuries.  In *Wand v. Burlington Northern Santa Fe Railway Co.*, 2010 WL 3034230 (N.D. Ill. Aug. 2, 2019), for example, the district court granted summary judgment to the plaintiff on causation based on facts very similar to this case.  There, the plaintiff employee attempted to climb a ladder mounted to a railcar, when the ladder's stile and handhold broke off the railcar, and the employee fell to the ground.  *Id.* at *2.  The employee sued the railroad under the FELA, alleging that the compromised ladder violated the SAA.  *Id.* at *3–4. The court agreed, and plaintiff moved for summary judgment on the issue of causation.  *Id.* at *4–5.  The railroad argued that the employee negligently failed to properly inspect the ladder before mounting it, whereby he would have been able to determine the equipment was unstable, and that this negligence was the sole cause of his injuries.  *Id.* at *5.  The court noted, however, that this argument "assumes that [the employee] fell and hurt himself because he tried to climb an insecure ladder"—which "not only forecloses a defense of sole proximate cause," but "also indicates that the accident could not have happened without the ladder's defects."  *Id.*  Thus, according to the railroad's own argument, the employee's injury "was at least partially caused by [the railroad's] violation of the SAA," a

14

conclusion that "no reasonable jury could fail to find." *Id.*

In another case with similar facts, *Onysko v. Delaware & Hudson Railway Co., Inc.*, 2017 WL 372235 (M.D. Pa. Jan. 26, 2017), the district court granted summary judgment to the plaintiff on causation. In *Onysko*, the plaintiff employee was walking across a crossover board connecting two railcars when the board gave way, causing the employee to fall to the ground and suffer several injuries. *Id.* at *1. The employee sued the railroad under the FELA, alleging that a missing bolt discovered in a subsequent inspection constituted a violation of the SAA. *Id.* The court agreed that this defect constituted a violation of the SAA, and rejected the railroad's "categorial denial[s]" to the employee's factual assertions. *Id.* at *6, 6 n.6. Thus, the court granted the employee's motion for partial summary judgment on the question of liability. *Id.* at *6.

Other courts around the country have similarly granted summary judgment to plaintiffs in FELA cases when a reasonable jury could not adopt the railroad's sole cause theory of causation. *See, e.g.*, *Chapman v. Norfolk S. Ry.*, 612 F. Supp. 3d 730, 738–39 (S.D. Ohio 2020) ("Based on an examination of the record . . . , there is insufficient evidence from which a reasonable jury could conclude that Chapman's 'one fluid motion' was the 'sole cause' of his injury."); *Ainsworth v. Rapid City, Pierre & E. R.R.*, 447 F. Supp. 3d 953, 963 (D.S.D. 2020) ("Defendant's independent cause defense fails because the court cannot find there

is a 'zero probability' that the railroad's conduct contributed to the employee's injury."); *Romero v. CSX Transp., Inc.*, 2008 WL 5156677, at *9 (D.N.J. Dec. 9, 2008) ("The causal connection between the violations of the FSAA . . . and the subject accident have been established.  No reasonable factfinder could conclude, as CSX argues, that in light of Romero's purported negligence, CSX's negligence played no role at all in the accident."); *Martinez v. Burlington N. & Santa Fe Ry. Co.*, 276 F. Supp. 2d 920, 928 (N.D. Ill. 2003) ("[E]ven if Plaintiff's own negligence . . . contributed to his injury . . . [,] Defendant's negligence played a role in producing Plaintiff's injury (i.e., Plaintiff's negligence was not the sole cause of his injury)."); *Hardlannert v. Ill. Cent. R.R. Co.*, 928 N.E.2d 172, 181 (Ill. Ct. App. 2010) ("[E]ven if Hardlannert could be found to have acted negligently in attempting to open both knuckles of the railcars to be coupled, no reasonable jury could find his negligence to be the sole cause of his back injury because the defective condition of the pin lifter . . . is causally related to Hardlannert's injury."); *Watson v. Burlington N. R.R. Co.*, 1997 Mont. Dist. LEXIS 228, at *6 (Mont. Dist. Ct. Sept. 30, 1997) ("The parties do not dispute the fact that the handbrake was defective when Watson tried to operate it.  The Court concludes therefore that Burlington Northern . . . is liable for Watson's injuries caused by the violation."); *Peressini v. Mont. Rail Link*, 1994 Mont. Dist. LEXIS 322, at *9 (Mont. Dist. Ct. June 20, 1994) ("MRL has failed to present any substantial

evidence, either direct or circumstantial, that the accident did not occur as alleged by Plaintiff. . . . Therefore, the Court finds that there is no genuine issue of material fact as to whether the defective pin lifter caused Plaintiff's accident and some injury to Plaintiff.").

Under the facts and circumstances presented here, Lyke's claim falls squarely in the second line of cases. Lyke has established there is no genuine issue of material fact that MRL's violation of 49 U.S.C. § 20302(a)(2) caused or contributed to his accident. It is undisputed that on January 15, 2021, (1) a handhold on the platform of MRL's railcar was missing a bolt, in violation of a federal safety statute designed specifically to protect railroad employees from injuries resulting from such defects, (2) with no warning about the missing bolt, Lyke grabbed the defective handhold, and (3) immediately after Lyke grabbed this defective handhold, it detached from the railcar, whereby Lyke fell from the railcar and was injured.

In contrast to *Bohannon* and *Walden*, MRL has not presented evidence with which a reasonable jury could find that, despite the railroad's SAA violation, Lyke's actions were the sole cause of his injuries. As noted above, MRL posits that Lyke was negligent in not identifying the missing bolt before using the handrail. (Docs. 36 at 5; 37 at 11–12; 37-2 at 3.) MRL also asserts that Lyke must have "fail[ed] to continuously maintain at least three points of contact." (Doc. 37

17

at 11.)  Specifically, MRL asserts that "Plaintiff would not have fallen and

sustained injuries if he had noticed the loose condition of the subject handhold

while maintaining three points of contact and subsequently dismounted the railcar

rather than continuing across it."  (*Id.* at 12.)  In short, MRL contends (1) that Lyke

failed to investigate and discover the defect in the equipment, and (2) failed to

mitigate against the risk created by the defective equipment.

But even drawing all factual inferences in MRL's favor, MRL's own theory

confirms that Lyke fell and hurt himself because he tried to use an unsecured

handhold.  Just as in *Wand*, MRL's argument demonstrates that defective handhold

was the immediate cause of Lyke's accident and injury, and that it could not have

happened without the existence of the defect.  As was the case there, no reasonable

jury in this case could find that Lyke's injury was not caused, at least in part, by

MRL's violation of the SAA.

In conclusion, there is no question that the SAA was violated, and MRL's

violation caused, at least in part, Lyke's injury.  Accordingly, under the FELA,

Lyke is entitled to summary judgment on the issue of liability.

### C.   Whether Lyke Is Entitled to Summary Judgment on MRL's Affirmative Defense of Contributory Negligence

As stated above, the FELA provides that, when "the violation by [a railroad]

common carrier of any statute enacted for the safety of employees contributed to

the injury" of an employee, "no such employee who may be injured . . . shall be

held to have been guilty of contributory negligence." 45 U.S.C. § 53.[4]  Proof of the violation of certain railroad safety statutes "eliminates contributory negligence as a consideration for any purpose." *Rogers*, 352 U.S. at 507 n.13.  Put succinctly, the FELA provides that "contributory negligence may not reduce damages when the claim is founded on a violation of the Safety Appliance Act." *Beimert v. Burlington N., Inc.*, 726 F.2d 412, 414 n.3 (8th Cir. 1984).

Again, MRL has stipulated that the missing bolt on the handhold constituted a violation of the SAA.  (Docs. 26 at 2; 37 at 6.)  The SAA is a "statute enacted for the safety of [railroad] employees." 45 U.S.C. § 53; *Eckert v. Aliquippa & S. R.R. Co.*, 828 F.2d 183, 186 (3d Cir. 1987).  Therefore, when MRL's violation of the SAA contributed to Lyke's injury, "the railroad is deprived of the defense[] of contributory negligence." *Crane*, 395 U.S. at 166 (citing 45 U.S.C. § 53).

Because the SAA was violated, and the Court has concluded that this violation caused, at least in part, Lyke's injury, Lyke is entitled to summary judgment on MRL's affirmative defense of contributory negligence.

/ / /

/ / /

/ / /

---

[4] In contrast, when "the employee may have been guilty of contributory negligence" and no such employee safety statute applies, "the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." *Id.*

## IV.   CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that Lyke's Motion for

Summary Judgment on Liability and Defendant's Contributory Negligence

Affirmative Defense (Doc. 31) is GRANTED.

DATED this 28th day of June, 2024.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge